57 CCPA

**R. H. MACY & CO., Inc., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5350.**

United States Court of Customs and Patent Appeals.

June 25, 1970.

Brooks & Brooks, New York City, attorneys of record, for appellant. Eugene F. Blauvelt, Gail T. Cumins, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Bernard J. Babb, New York City, for the United States.

Before RICH, Acting Chief Judge, BALDWIN and LANE, Judges, and

JONES, Senior Judge, United States Court of Claims, sitting by designation.

LANE, Judge.

The importer appeals from the decision and judgment of the Customs Court, 62 Cust.Ct. 219, 297 F.Supp. 171, C.D. 3733 (1969), overruling its protest against the classification of imported merchandise. We affirm.

The merchandise is described as embroidered curtains in chief value of acetate fabric and hand-painted panels in chief value of polyester fabric. The curtains were classified under item 365.85 of the Tariff Schedules of the United States (TSUS) and assessed with duty at 42½ percentum ad valorem. The panels were classified under TSUS item 367.60 and dutied at 25¢ per pound plus 30 per centum ad valorem. These statutory provisions read as follows:

Schedule 3.—Textile Fibers and Textile Products

  \*    \*    \*    \*    \*    \*    \*    \*

Part 5.—Textile Furnishings.

  \*    \*    \*    \*    \*    \*    \*    \*

Subpart C.—Tapestries, Linens, and Other Furnishings

  \*    \*    \*    \*    \*    \*    \*    \*

Lace or net furnishings, whether or not ornamented, and other furnishings, ornamented:

    Handmade-lace furnishings:

  \*    \*    \*    \*    \*    \*    \*    \*

    Other furnishings, ornamented:

        Of cotton . . .    \*  \*  \*

  \*    \*    \*    \*    \*    \*    \*    \*

365.85 Other .................................. 42.5% ad. val.

    Other furnishings, not ornamented:

  \*    \*    \*    \*    \*    \*    \*    \*

        Of man-made fibers:

                \*  \*  \*

  \*  \*  \*  Knit (\* \* \*) . . . \*  \*  \*

  \*    \*    \*    \*    \*    \*    \*    \*

        Other:

  \*  \*  \*    Of glass . . .   \*  \*  \*

367.60        Other .......................... 25¢ per lb.
                                          +30% ad val.

---

Headnote 1 to schedule 3 provides that the schedule does not cover footwear, headwear, gloves, handbags, pillows, mattresses, *and other articles of textile materials provided for in schedule 7.*

Headnote 2 to schedule 3 provides that the term "textile materials" includes, among other things, man-made fibers and articles produced therefrom.

Appellant contends that both the curtains and the panels should have been classified under TSUS item 772.35. The provision is as follows:

Schedule 7.—Specified Products;

    Miscellaneous and Nonenumerated Products

       \*    \*    \*    \*    \*    \*    \*    \*

       \*    \*    \*    \*    \*    \*    \*    \*

Part 12.—Rubber and Plastics Products

    Subpart C.—Specified Rubber and Plastics Products

       \*    \*    \*    \*    \*    \*    \*    \*

772.35   Curtains and drapes, including panels and valances; napkins, table covers, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing of rubber or plastics . . 12.5% ad val.

———◆———

Headnote 1 to part 12 provides that the term "plastics" includes, among other things, synthetic plastics materials as defined in certain parts of schedule 4. The parties stipulated below that cellulose acetate and polyester are, in their basic crude forms and not further processed, plastics materials meeting those definitions.

The Customs Court held that curtains and drapes of *woven* plastic material, as here involved, were correctly classified under the textile schedule (schedule 3), and were not removed from that schedule by headnote 1 thereto, which, as mentioned above, states that schedule 3 does not cover "articles of textile materials provided for in schedule 7." The court viewed the schedule 7, part 12, provision contended for by appellant as covering only curtains and drapes in nonwoven form, such as in sheet form. This view was deduced from various indicia of Congressional intent, including the Explanatory Notes contained in the Tariff Classification Study, Schedule 7, Part 12, which state, at page 435:

The basic, statutory provisions under which plastics and rubber articles are classified for tariff purposes remained virtually unchanged since their enactment in 1930. Yet, these provisions became obsolete, confused, and of uncertain application within a few short years after their enactment. The preparation of new tariff provisions for plastics and rubber products involved the resolutions of a number of basic problems relating to—

(1) the establishment of clear and meaningful distinctions between—

(a) the basic plastics and rubber materials to be provided for in the proposed chemical schedule and the articles produced from these materials to be provided for elsewhere, and

(b) the man-made fibers and products thereof to be provided for in the proposed textile provisions and the other articles of rubber or plastics; and

(2) establishment of rate descriptions for specific classes of goods and for assignment thereto of rates of duty which are substantially equivalent to those presently applicable.

The court below concluded from this passage that there was a distinction to be drawn between products of man-made fibers, which were to be classified under the textile schedule *even if* the fibers were of rubber or plastic, and "other articles of rubber or plastics," which

would be classified under part 12 of schedule 7. The court concluded:

> We are inclined to the view that the term "plastic" as employed in part 12 of schedule 7 describes a form as well as a substance, and does not cover plastic materials which have been converted into textile materials.
>
> A yarn which was produced from a basic plastic substance has by that process of manufacture taken on the status of a textile material from which a textile product will be produced, and for tariff purposes may no longer be considered a "plastic" but rather a man-made fiber.

Appellant contends that the statutory definition of "rubber or plastics" as set forth in the Tariff Schedules of the United States was binding on the Customs Court, and that the court's resort to extrinsic aids to determine Congressional intent was unnecessary and illegal. It is of course true that the statutory definition is binding, but we do not find that the Customs Court departed from that definition. As mentioned above, headnote 1 to part 12 of schedule 7 states that the term "plastics" refers to "synthetic plastics materials" as defined in schedule 4. The definition in this headnote is silent as to form, and it is not at all clear that Congress intended to cover all forms, including the fiber and yarn forms from which the merchandise here involved was made. In fact, headnote 3 to schedule 4, part 1, subpart C, and headnote 2 to schedule 4, part 4, subpart A, lead us to the conclusion that not all forms of plastics were to be covered by part 12 of schedule 7. Those headnotes respectively provide:

> The plastic materials may be in solid, semi-solid, or liquid condition, such as flakes, powders, pellets, granules, solutions, emulsions, and other basic *forms not further processed.* (Emphasis added.)

> These synthetic plastics materials may be in solid, semi-solid, or liquid condition such as flakes, powders, pellets, granules, solutions, emulsions, and other basic crude *forms not further processed.* (Emphasis added.)

By contrast, schedule 3 is not silent on form. Headnote 2 to that schedule expressly provides that the term "textile materials" includes man-made materials in fiber form. We think the Customs Court was correct in considering all the relevant headnotes and extrinsic sources to determine Congressional intent, and that it has not applied a definition of "plastics" contrary to the statutory definition.

Appellant further contends that item 772.35 is an *eo nomine* provision for curtains and panels of rubber or plastics and is clearly a more specific provision than either item 365.85 or 367.60 under which the imported curtains and panels were classified. If the merchandise fitted both the classified items and the claimed items of TSUS, we would agree with appellant that the *eo nomine* provision should prevail. However, in the present case we agree with the Customs Court that the merchandise does not fit under item 772.35, because the curtains and panels are not "of rubber or plastics" as those terms are used by Congress, but rather are "of man-made fibers," and hence must be classified under schedule 3.

Appellant also contends that the "decision of the Customs Court is contrary to the legislative intent and, if affirmed, will lead to anomalies and confusion." We have concluded above that the Customs Court's decision was in accord with the legislative intent as we discern it. Headnote 1 to schedule 3 does not convince us of a contrary Congressional intent. As previously mentioned, that headnote provides that schedule 3 does not cover "footwear, headwear, gloves, handbags, pillows, mattresses, and other articles of textile materials provided for in schedule 7." While we agree with appellant that this headnote provides for

some textile articles to be classified under schedule 7, we think it is significant that all of the recited articles are in parts 1 and 4 of schedule 7 and none are in part 12. In finding that articles of woven fabrics are not classifiable under part 12 of schedule 7, but rather under the textile schedule, the Customs Court has applied what we consider to be the most harmonious interpretation of the statutory provisions involved.

The judgment is affirmed.

Affirmed.