59 CCPA

**TUSCANY FABRICS, INC., Appellant,**

v.

The **UNITED STATES,** Appellee.

Customs Appeal No. 5436.

United States Court of Customs
and Patent Appeals.

Feb. 17, 1972.

Baldwin, J., concurred in result
only.

Worley, C. J., took no part in decision.

Weisman, Allan, Spett & Sheinberg,
Barnes, Richardson & Colburn, New
York City, attorneys of record, for appellant; Sydney B. Wertheimer, O. John
Rogge, Joseph Schwartz, New York
City, James V. Maher, Richard H. Rosenberg, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen.,
Andrew P. Vance, Chief, Customs Section, John A. Winters, New York City,
for the United States.

Before WORLEY, Chief Judge and
RICH, ALMOND, BALDWIN and
LANE, Judges.

RICH, Judge.

This appeal is from a judgment of the
United States Customs Court, Second
Division, 65 Cust.Ct. 182, 317 F.Supp.
741, C.D. 4076 (1970), overruling the
importer's protest against the classification of the imported merchandise. We
affirm.

The merchandise at bar is woven fabric concededly in chief weight of wool [1]

---

1. While there was considerable controversy
below over the exact composition, the
Customs Court found the exportation to
contain "by weight approximately 70.4
per cent reprocessed wool, 21.8 percent
nylon and 7.8 percent asbestos." The
exact figures are important only in computing relative values; the fabric was in
chief weight of wool by all measurements.

and allegedly in chief value of asbestos. It was classified as "Woven fabrics, of wool," TSUS 336.50, by virtue of headnote 7 to schedule 3, which provides that "With respect to fabrics provided for in part 3 * * * of this schedule, provision for fabrics in chief value of wool [2] shall also apply to fabrics in chief weight of wool," and it is claimed as "cloth * * * of asbestos, or of asbestos and any other spinnable fiber," TSUS 518.21.

The Customs Court initially conceded that,

> If read without reference to other provisions of the tariff schedules, * * * [item 518.21] would cover the instant merchandise, if in chief value of asbestos, under the provision for cloth of asbestos; otherwise, under the provision for cloth of asbestos and other spinnable fibers.

Parenthetically, we note that item 336.50 covers the instant merchandise just as aptly, "If read without reference to other provisions of the tariff schedules * * *." The question, then, is how to harmonize two seemingly discordant provisions. This the Customs Court did by reading item 518.21 in conjunction with headnote 1(ii) of schedule 3, which excepts therefrom "asbestos fibers, or yarns, fabrics, or other articles containing asbestos in significant amounts, i. e., articles in which asbestos is used in sufficient amounts to impart its peculiar characteristics or properties to the article (see part 1F of schedule 5) * * *." It conceded that there is no corresponding provision in part 1F of schedule 5 itself, but reasoned that

> * * * the cross reference in schedule 3 is an indication that Congress intended that yarns, fabrics or other articles containing asbestos in significant amounts, as defined in the headnote, should be classified in schedule 5, part 1F, but that yarns, fabrics or

textile articles containing insignificant amounts of asbestos should be classified in schedule 3.

In additional support of its holding that "The criterion [for inclusion under item 518.21] is not chief value, but the characteristics or properties of asbestos imparted to the article," the Customs Court quoted from relevant portions of the Tariff Classification Study and from the legislative history of headnote 7 to schedule 3.

The court then disposed of appellant's two constitutional arguments, which were and are that the enactment of headnote 7 to schedule 3 violated the due process clause of the Fifth Amendment because it was contained in a rider which "had absolutely no relation to the title of the act under which it was enacted into law" and that headnote 1(ii) to schedule 3 is "void for vagueness." Noting that "mixed legislation is often enacted," the court held that "There is no restriction in the Constitution limiting Congress to one subject of legislation in each bill * * *." As for the "void for vagueness" argument, the Customs Court questioned the applicability of the doctrine to tariff statutes but concluded that, in any event, headnote 1(ii) sets a standard which can be understood reasonably well by those to whom it is directed and that it therefore would not be constitutionally infirm even if the doctrine were held applicable to tariff statutes.

Finally, the Customs Court indicated that among the "peculiar characteristics" of asbestos to which the statute might have reference are incombustibility, nonconductivity, high specific gravity, and resistance to chemicals and moths. Turning to the evidence on these subjects, which had been adduced by both parties, the court held that the above characteristics had not been imparted to the importations and/or in-

---

2. General headnote 9, Definitions, provides that, "unless the context otherwise requires," the term "of," when used between the description of an article and a material, "means that the article is wholly or in chief value of the named material * * *."

creased therein relative to otherwise similar fabrics not containing asbestos.

## OPINION

We will discuss the issues presented by this appeal in slightly different order than they were discussed below.

### I. *Constitutionality of the Enactment of Headnote 7*

██ Appellant seems to be making two separate arguments on this score: First, that the text of a piece of legislation must be logically related to its title, and, second, that unrelated provisions may not be included in one piece of legislation. Appellate concedes that there are no such restrictions specifically set forth in the Constitution, but urges us to read one or both of them into the general provision of the due process clause.

Since it never has been the law that the enactment *by Congress* of mixed legislation or of legislation the substance of which is unrelated to its title is unconstitutional, see, e. g., Hadden v. The Collector, 72 U.S. 107, 18 L.Ed. 518 (1886), and since appellant's principal argument seems to be that these restrictions have been generally adopted by the several states in their respective state constitutions, this seems to be one of those cases in which it is argued that a practice, once considered constitutional, *has become* unconstitutional because of our society's increasingly demanding conception of "fundamental fairness." Cf. Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). It may be that the time has indeed come for the Supreme Court to re-examine such old cases as Hadden v. The Collector, supra. However, we ourselves see nothing pernicious in the practices ap-

pellant has asked us to condemn, nor has the Supreme Court's explanation[3] for Congress's inclusion in the Organic Act of the Philippines of *express* provisions such as appellant would have us read into the due process clause persuaded us that such limitations on the power of the legislature are a necessary element of the fundamental law of every civilized country. Furthermore, we, too, are aware that Congress often passes mixed legislation and legislation which bears no relationship to its title, and we would be reluctant indeed to cast all such legislation (or, at least, all such *recent* legislation) into doubt without a far stronger showing of consensus among scholars of the law and political science than appellant has made here. Compare Wolf v. Colorado, supra, at 29–30, 69 S.Ct. 1359. Accordingly, we hold that the enactment of headnote 7 of schedule 3 did not violate the due process clause of the Fifth Amendment.

### II. *Constitutionality of Headnote 1(ii)*

██ Appellant argues that headnote 1(ii) of schedule 3, quoted supra, "does not set a reasonable standard whereby the importer can determine whether he has complied with the statute" and that it "leaves him to the whim of the Customs Bureau * * *." Although appellant makes much of the alleged indefiniteness of the term "significant amounts," that term is defined for purposes of this headnote as "sufficient amounts to impart its [i. e., asbestos's] peculiar characteristics or properties to the article," and it is really on the intelligibility of that phrase that appellant's arguments must stand or fall.

The Government emphasizes the word "reasonably" in the opinion below, arguing that "Absolute precision is not re-

---

3. In Posados v. Warner, Barnes & Co., 279 U.S. 340, 49 S.Ct. 333, 73 L.Ed. 729 (1929), cited to us by appellant, the Supreme Court stated that

    The purpose [of provisions barring mixed legislation and legislation the subject of which is unrelated to the title] is to prevent the inclusion of incon-

gruous and unrelated matters in the same measure and to guard against inadvertence, stealth and fraud in legislation. When bills conform to such requirements, their titles serve conveniently to apprise legislators and the public of the subjects under consideration.

quired" in the drafting of statutes in general and the tariff schedules in particular. Rather, to quote American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950),

> The applicable standard * * * is * * * the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important.

While the Government concedes that the controverted terms are not "absolutely precise," it argues that, "in the context herein, they are not 'so vague as to furnish no valid rule or standard' * * *."

Additionally, the Government makes two further arguments of general applicability to the Tariff Schedules. First, it argues that the "void for vagueness" doctrine applies only to criminal statutes and to civil statutes providing for the exaction of a penalty.[4] Second, it argues that the Fifth Amendment's due process standards should be held inapplicable to the power of Congress to determine the terms upon which *merchandise* may enter the United States, just as it has been held inapplicable to the power of Congress to determine the terms upon which *people* may enter the United States. See Boutilier v. Immigration and Naturalization Service, 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967).

It may be conceded that headnote 1(ii) to schedule 3 is not a model of legislative drafting, and it may even be hoped that this litigation will lead to its amendment. However, we recognize that, if the objective of headnote 1(ii) was to exclude from schedule 3 those articles in which asbestos served *any* functional role, it would not have been easy to have phrased the headnote in terms of exact proportions or a single, rigorously accurate test. There are too many variables to be considered, not the least of which is that asbestos apparently has a plurality of "peculiar characteristics or properties," each one of which may be imparted to a given substance at a different level of asbestos concentration. We have previously recognized that unreasonable precision cannot be expected in the drafting of the tariff schedules, Amity Fabrics, Inc. v. United States, 435 F.2d 569, 58 CCPA 73, C.A.D. 1006 (1970), Arthur J. Fritz & Co. v. United States, 452 F.2d 1399, 59 CCPA, 6 Cust. Bull & Dec. No. 3 at 20, C.A.D. 1036 (1971), and the mere fact that there may be marginal cases in which it is difficult to determine whether amounts of asbestos were used which were "significant" in the statutory sense does not establish that the language is unconstitutionally ambiguous. Compare United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), and United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). Additionally, to paraphrase the Supreme Court's language in *Harriss*, "if this classification can be made constitutionally definite by a reasonable construction of the schedules, this Court is under a duty to give the schedules that construction."

The "peculiar characteristics or properties" of asbestos which appear to be potentially relevant in cases of this sort are incombustibility, nonconductivity, high density, and resistance to chemicals, moths, and dyes. The opinion below examines appellant's evidence concerning the extent to which the properties were added to otherwise identical cloths by the addition of the asbestos and the manufacturer's purpose in adding the asbestos. We fully approve the manner in which the lower court evaluated appellant's evidence. In effect, it held that the "peculiar characteristics or properties" of asbestos had not been imparted to an article unless the asbestos was present in sufficient quantity to serve a commercial purpose. Cf. Varsity Watch Co. v. United States, 34 CCPA 155, 162–163, C.A.D. 359 (1947),

---

4. The Government implicitly assumes that the exaction of a penalty is not to be equated with the exaction of ordinary duties or taxes.

and John S. Connor, Inc. v. United States, 54 Cust.Ct. 213, 219, C.D. 2536 (1965). We think that this construction of headnote 1(ii) is a reasonable construction and that, flexible as it is, it is sufficiently definite to pass muster under the "void for vagueness" doctrine. It is, after all, quite akin to the de minimis rule and no vaguer than many other concepts with which we must deal. Thus we do not reach the Government's arguments that the draftsmen of the tariff schedules were, in any event, exempt from both the "void for vagueness" doctrine in particular and the requirements of due process in general.

### III. Harmonization of TSUS Items 336.50 and 518.21

■ Whether or not appellant proved that the imports at bar were in chief value of asbestos, it seems reasonable to assume that it is possible to produce fabric which is in chief weight of wool and in chief value of asbestos. At first blush such fabric would seem to be provided for twice in the schedules, and it therefore was incumbent upon the Customs Court to harmonize the two competing provisions in some fashion. This it did by reading the two items in conjunction with "All relevant headnotes," as required by R. H. Macy & Co. v. United States, 57 CCPA 115, 118, 428 F.2d 856, 859, C.A.D. 988 (1970), and general headnote 9, which states that the term "of" means "wholly or in chief value of" the named material "unless the context otherwise requires." (Emphasis ours.) While the result arrived at by the Customs Court is not wholly free from doubt, we think that it is reason-able in view of the express language of the schedules and is supported by the Classification Study and by the legislative history of headnote 7 to schedule 3, quoted at length in the opinion below.[5]

### IV. Effect of the Asbestos

Accordingly, we turn to the final questions, whether there was evidence to support the lower court's resolution of the factual issues and, if so, whether its resolution thereof was clearly contrary to the weight of the evidence. United States v. F. W. Myers & Co., 45 CCPA 48, 52, C.A.D. 671 (1958). The Customs Court held that appellant had not shown that the addition of approximately 8% asbestos to a woven fabric otherwise consisting of wool and nylon in the ratio of 3.6 to 1 by weight had served any commercial purpose.

Appellant argues that "The record shows that a fabric with 8% asbestos is more flame retardant and moth resistant than a similar cloth without any asbestos content" and that "the addition of 8% asbestos substantially increases the weight of the fabric and lends greater heat resistance and insulation to the fabric." We think that, at least with respect to flame retardance and moth resistance, these statements are probably accurate. However, the question is not whether the addition of the asbestos made any difference; it is whether the addition made enough difference to be commercially significant. On that point there is ample evidence, set forth at length in the opinion below, that the addition of the asbestos was not commercially significant except insofar as it arguably entitled the importations to a

5. The Government also argues that

Assuming, arguendo, that by incorporation of General Interpretative Rule 9 (f) (i) into item 518.21, and by incorporation of headnote 7 into item 336.50, the competition were between "cloth in chief value of asbestos" and "woven fabrics in chief weight of wool," the weight criterion of item 336.50 "provides for the article with the greatest degree of accuracy and certainty" (United States, etc. v. Simon Saw & Steel Co., 51 CCPA 33, 41, C.A.D. 834 (1964)), and "woven fabrics" is more specific than "cloth" since "cloth" is a generic term which encompasses "a woven, knitted or pressed fabric * * *." Webster's New World Dictionary, College Edition (1962), p. 276.

While we do not find it necessary to rely on this argument, we think it has considerable merit and might well have carried the day for the Government even in the absence of other considerations present here.

much lower import duty than otherwise identical cloth without the asbestos would have been entitled to. Indeed, we are left with the strong impression that the possibility that this cloth would be entitled to the lower duty rate provided for "cloth * * * of asbestos" was the sole reason that the asbestos was used in the cloth. While there is nothing morally reprehensible about arranging one's affairs so as to minimize customs duties, the possibility of obtaining a lower rate is not itself a "commercial purpose" such as is involved here. Appellant has not persuaded us that the Customs Court erred in holding that the asbestos in these importations served no other "commercial purpose." Accordingly, the judgment below is affirmed.

Affirmed.

BALDWIN, J., concurs in result only.

WORLEY, C. J., took no part in the decision of this case.