LIEBA, INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Consolidated Court No. 76-11-02408

Before FORD, Judge.

(Decided June 15, 1981)

*Burns, Doane, Swecker & Mathis* (*William L. Mathis* on the briefs) for the plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Jerry P. Wiskin* on the briefs), for the defendant.

FORD, *Judge:* The parties to this action have cross moved for summary judgment under Rule 56. The imported bristles were classified under items 389.60 and 389.62 [1] of the Tariff Schedules of the United

---

[1] Item 389.60, TSUS, was renumbered 389.62, TSUS, under Executive Order 11974, of February 25, 1977.

States. Plaintiff maintains the imported bristles are more specifically provided for alternatively under items 186.30, 309.43, 309.90 or 774.60 of the Tariff Schedules of the United States.

With respect to item 186.30, *supra*, it is the position of defendant that classification thereunder is precluded as a matter of law since said item is limited to products from animal or vegetable sources, and that the doctrine of similitude is inapplicable to plaintiff's claim under item 186.30. The flagging, defendant contends, constitutes a manufacturing process and accordingly items 309.43 and 309.90 do not cover the imported merchandise. Item 774.60, being a basket provision, is less specific according to defendant than the classified provision covering the imported merchandise.

The material issues of fact are not in controversy and the parties have agreed to the following:

1. The imported merchandise, assessed with duty at 15% ad valorem and 25¢ per lb. under item 389.60 and 389.62, TSUS, consists of brush bristles.

2. The imported brush bristles are in the form of monofilaments (excluding laminated and plexiform filaments) of polyvinyl chloride (a plastic material) being approximately 4½ inches in length.

3. The brush bristles are greater than 0.004 but not over 0.020 inch in maximum cross-sectional dimension.

4. The imported brush bristles have ends which are flagged and not tapered.

5. The imported brush bristles are articles which consist wholly of manmade textile fibers in noncontinuous form and of a material other than nylon, shellac, copal, natural rubber, casein or a vulcanized fiber, and which fibers are not carded, combed or spun.

6. "Flagging" is a further manufacturing step.

The statutory provisions involved provide as follows:

10. *General Interpretative Rules.* For the purposes of these schedules—

\*      \*      \*      \*      \*      \*      \*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings intended under it but can be limited thereby;

(ii) comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

(d) if two or more tariff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest, and, should the highest original statutory rate be applicable to two or more of such descriptions, the article shall be subject to duty under that one of such descriptions which first appears in the schedules;

\*    \*    \*    \*    \*    \*    \*

Schedule 1, Part 15, Subpart D:

\*    \*    \*    \*    \*    \*    \*

186.30    Bristles, crude, or processed in any way for use in bristles or other articles_____    0.75¢ per lb. Rate of duty modified by T.D. 68–9.]

\*    \*    \*    \*    \*    \*    \*

*Schedule 3 headnotes:*

\*    \*    \*    \*    \*    \*    \*

2. For the purposes of the tariff schedules—

(a) the term *"textile materials"* means—

(i) the fibers (cotton, other vegetable fibers, wool and hair, silk, and man-made fibers) provided for in part 1 of this schedule,

(ii) the yarn intermediates and the yarns provided for in part 1 and part 4 (elastic yarns) of this schedule,

(iii) the cordage provided for in part 2 and part 4 (elastic cordage) of this schedule,

(iv) the fabrics provided for in part 3 and part 4 of this schedule,

(v) braids, as defined in headnote 2(f), *infra*, and

(vi) except as provided by headnote 5, articles produced from any of the foregoing products;

\*    \*    \*    \*    \*    \*    \*

Schedule 3, Part 1, Subpart E:

\*    \*    \*    \*    \*    \*    \*

Fibers (in noncontinuous form), whether known as cut fiber, staple, or by any other name, not carded, not combed, and not otherwise processed:

Wholly of filaments (except laminated filaments and plexiform filaments):

\*    \*    \*    \*    \*    \*    \*

309.43         Other_____ 7.5% ad val. [Rate of duty modified by T.D. 68–9.]

Textile fibers, of man-made fibers, carded, combed, or other processed but not spun:

309.90           Wholly of man-made fibers_____ 2.5¢ per lb.+ 7.5% ad val. [Rate of duty modified by T.D. 68–9.]

Schedule 3, Part 7, Subpart B:

\*      \*      \*      \*      \*      \*      \*

Articles not specially provided for, of textile materials:

\*      \*      \*      \*      \*      \*      \*

Of man-made fibers:

\*      \*      \*      \*      \*      \*      \*

389.60         Other_____ 25¢ per lb.+
[389.62.]                               15% ad val. [Rate of duty modified by T.D. 68–9.]

Schedule 7, Part 12, Subpart B:
Articles not specially provided for, of rubber or plastics:

\*      \*      \*      \*      \*      \*      \*

774.60         Other_____ 8.5% ad val.

The classification of merchandise by the Customs Service is presumed to be correct. 28 U.S.C. 2635 (1976).[2] Accordingly, plaintiff has the dual burden of establishing the classification to be incorrect and affirmatively establish the correct classification.

The parties are in agreement that the imported polyvinyl chloride brush bristles are composed of plastic. Such merchandise falls within schedule 3, TSUS, *i.e.*, textile materials, if they fall within headnote 2(a), *supra*. This court in *R. H. Macy & Co., Inc.* v. *United States*, 62 Cust. Ct. 219, C.D. 3733, 297 F. Supp. 171 (1969), *aff'd*, 57 CCPA 115, C.A.D. 988, 428 F. 2d 856 (1970) made the following observation:

---

[2] The presumption is Presently covered by 28 U.S.C. 2639(a)(1) (1980).

\* \* \* We are inclined to view that the term "plastic" as employed in part 12 of schedule 7 describes a form as well as a substance, and does not cover plastic materials which have been converted into textile materials.

A yarn which was produced from a basic plastic substance has by that process of manufacture taken on the status of a textile material from which a textile product will be produced, and for tariff purposes may no longer be considered a "plastic" but rather a man-made fiber. (Cf. *Tide Water Oil Company* v. *United States,* 171 U.S. 210 and *L. Mendelson Co.* v. *United States,* 9 Cust. Ct. 256; C.D. 704.) Textile fibers (of which man-made fibers are one form) and products made therefrom are provided for in schedule 3 of the Tariff Schedules of the United States \* \* \*. [P. 230.]

There is no dispute that the imported bristles are flagged at one end but not tapered. The flagging removes the merchandise from the category of manmade fibers per se, and brings it within the category of an article of manmade fibers which latter fact is conceded by plaintiff in its Memorandum in Opposition to Defendant's Cross Motion for Summary Judgment. It is apparent from a reading of Schedule 3 that said schedule is intended to include textile fibers and textile products. The court observes in the Tariff Classification Study (1960), Schedule 3, page 245, that item 389.60 was derived from paragraphs 1308 and 1312 of the Tariff Act of 1930, both of which cover articles of manufacture. Headnote 1 of Schedule 3, Part 7, Subpart B, reads as follows: "[t]his subpart covers articles of textile materials, not covered elsewhere in the tariff schedules". The above headnote together with the provisions following indicate the intent to make this subpart the basket provision of schedule 3. This headnote does not inure to the benefit of plaintiff since, as indicated *infra,* the court is of the opinion that said merchandise is not provided for elsewhere in the tariff schedules. The court is aware of Headnote 1(x) of Schedule 3, Part 1, Subpart E which excludes "brush bristles provided for in part 12C of schedule 7. Defendant contends and plaintiff admits that the provision for brush bristles in schedule 7 does not cover the imported merchandise for the following reasons: (a) they are not tapered or within the maximum cross section as required in the superior heading; (b) they are not of nylon as required by item 773.15; (c) the bristles are not included within item 773.20 for "other" as they do not meet the requirements in the superior heading. Accordingly, plaintiff cannot benefit from the headnote.

Based upon the foregoing exclusions, it is plaintiff's position that since the imported bristles are excluded in 773.15 and 773.20, *supra,* it logically follows they are properly subject to classification under item 186.30 which is the only other provision for bristles. Defendant argues

said provision covers only natural bristles and not those of man-made fibers. This position is borne out by the information contained in the Tariff Classification Study (1960), Schedule 1, Part 15, Subpart D, wherein the following is contained:

> Subpart D brings together provisions now included in 8 paragraphs covering certain feathers, downs, bristles, and hair, crude, sorted, or prepared for use in other articles. None of the provisions in subpart D involves duty changes, except item 186.30 which provides for bristles, crude, or processed in any way for use in brushes or other articles.
> Bristles, crude, not bunched, prepared, or sorted are currently free of duty under paragraph 1637 of the Tariff Act of 1930, whereas, bristles, bunched, prepared, or sorted are dutiable at 3 cents per pound under paragraph 1507. Virtually all imports have been bunched, prepared, or sorted, and are therefore dutiable. Inasmuch as the 3 cents per pound duty is insignificant (equal to 1.1 percent ad valorem on imports in 1957), the separate free provision for crude bristles has been dropped. Also the Cuban preference of 0.6 cent per pound has been eliminated. Imports from Cuba are very small and the ad valorem equivalent of the preference amounts to far less than one percent. All bristles, therefore, whether crude or prepared, and from whatever source are covered by item 186.30 at the rate of 3 cents per pound. [P. 254.]

All the articles covered by the study are natural, *i.e.*, feathers, hair and fur, not on the skin, as well as bristles. The only change in duty involved bristles which eliminated the provision for crude bristles which, under the Tariff Act of 1930, were entitled to entry free of duty. The court observes, as an historical fact, that bristles were first provided for as a dutiable article under the Tariff Act of 1816. It was not until the Tariff Act of 1894 that Congress provided for both crude and processed bristles, and accorded free entry for the former and a dutiable status for the latter. Interestingly enough the same language was utilized in the dutiable provisions of the Tariff Act of 1894 and 1930 and the identical language was used in the free provision of said acts. Accordingly, the court is of the opinion that item 186.30 was intended to cover the importation of natural bristles.

Plaintiff's claims under items 309.43 and 309.90 are inapplicable. It is axiomatic in this field of jurisprudence that the Summaries of Trade and Tariff Information (1969), while not indicative of the intent of Congress, may serve as a useful tool in determining the scope of the provisions. *Hawaiian Motor Company* v. *United States*, 82 Cust. Ct. 70, C.D. 4790, 473 F. Supp. 787 (1979), *aff'd*, 67 CCPA 42, C.A.D. 1241, 617 F. 2d 286 (1980). Said Summary makes the following comment:

> The products covered by this summary consist of noncon-tinuous manmade fibers, not corded, not combed, and not

otherwise processed. The products are manufactured generally by cutting various forms of continuous manmade fibers (usually monofilaments, strips, or grouped filaments) into short lengths. * * *. [P. 75.]

The Summary continues and states with respect to item 309.90, TSUS:

The manmade fibers covered herein are those which have been carded, combed, or otherwise processed but not spun into yarn. They are usually intermediate products used for the manufacture of spun yarn. Trade in such processed fibers consists almost entirely of sliver, roving, or top.

  *　　*　　*　　*　　*　　*　　*

Sliver, a round strand of fibers loosely compressed together without twist, is condensed from the thin webs formed by carding machines. Roving is sliver usually put through draw frames to make the fibers more nearly parallel. Top is an untwisted strand of combed sliver of manmade fibers; it is also the product of direct-processing machines which use manmade grouped filaments as the raw material.

Sliver is normally further processed within the establishment in which it is produced. The sliver that enters commerce and the sliver manufactured by direct-processing machines are usually shipped in cylindrical containers of various sizes. Roving is also primarily an intermediate operation in a yarn-spinning plant; that entering commerce is generally wound into bobbins with the use of flyers which insert a slight amount of twist. Top almost always enters trade channels; it is usually shipped in coiled form in cylindrical and square containers or in ball form, sometimes with one end flattened. [P. 109.]

It is apparent item 309.43 does not cover fibers which have been further processed, as exemplified by the flagging of the instant merchandise. Likewise item 309.90 appears to encompass such articles as were intended to be used for the spinning of yarn. This is further borne out by the First Supplemental Report, which on page 24 in reference 12, eliminated "for spinning" and refers to reference No. 3 on page 20. Therefore items 309.43 and 309.90 do not encompass the imported merchandise.

Plaintiff further urges if the imported merchandise is not subject to classification under any of the foregoing, it is properly dutiable under item 774.60, which covers other articles, n.s.p.f., of rubber or plastic. While this provision contains a n.s.p.f. clause it is nonetheless more specific than the classified provision since the latter is further encumbered by Headnote 1 of Schedule 3, Part 7, Subpart B. The court finds item 389.62 to be more specific than item 774.60. The term "plastic" as determined by the court in *Macy, supra,*

indicates that Schedule 7, while describing form and substance, does not cover plastic material which has been converted to textile materials. Additionally, regarding the question of relative specificity, the court in *Arthur J. Humphreys, Packard-Bell Electronics* v. *United States*, 56 CCPA 67, C.A.D. 956, 407 F. 2d 417 (1969), citing *United States* v. *Simon Saw & Steel Company*, 51 CCPA 33, C.A.D. 834 (1964), held the more specific provision is the one more difficult to satisfy. The definition of textile materials imposed by Headnote 2a of Schedule 3 has more stringent requirements and is therefore more specific.

Plaintiff urges in its brief but did not plead the issue of applicability to the similitude provision as it would apply to item 186.30. The law is well settled that claims not contained within the parameter of the pleading may not be considered. *United States* v. *E. H. Bailey & Co.*, 32 CCPA 89, C.A.D. 291 (1944).

Accordingly all claims of plaintiff are overruled. Judgment will be issued accordingly.