**TUSCANY FABRICS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

C.D. 4076; Protest 70/12887–3160–70.

United States Customs Court,
Second Division.
Sept. 18, 1970.

---

Weisman, Allan, Spett & Sheinberg, New York City (Sydney B. Wertheimer, O. John Rogge, Richard H. Rosenberg and Richard M. Resnik, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (John A. Winters, New York City, trial attorney), for defendant.

Before RAO, FORD, and NEWMAN, Judges.

RAO, Chief Judge:

The merchandise involved in this case is described on the invoice as 10 pieces of "Asbestos Products," comprised of 8 percent asbestos, 72 percent reprocessed wool and 20 percent nylon. It was assessed with duty at 60 per centum ad valorem and 37½ cents per pound under item 336.50 of the Tariff Schedules of the United States, as woven fabrics of wool, valued not over $1.26⅔ per pound. It is claimed that the merchandise is properly dutiable at 6 per centum ad valorem, under item 518.21 of said tariff schedules as cloth of asbestos or of asbestos and any other spinnable fiber.

I. These figures are in the testimony of Paolo Bini, manufacturer of the merchandise, and in exhibit 7, a report of an analysis by the Institute of Merchandise of the University of Bologna. Exhibit B, a

The pertinent provisions of the tariff schedules are as follows:

*Classification:*

Schedule 3, Part 3, Subpart C:
Woven fabrics, of wool:

\* \* \* \* \*

Other:

\* \* \* \* \*

Other:

336.50 Valued not over $1.26⅔ per pound .......... 37.5¢ per lb. + 60% ad val.

*Claim:*

Schedule 5, Part 1, Subpart F:

518.21 Yarn, slivers, rovings, wick, rope, cord, cloth, tape, and tubing, of asbestos, or of asbestos and any other spinnable fiber, with or without wire, and articles of any of the foregoing ............ 6% ad val.

*Pertinent headnotes:*
*Schedule 3 headnotes:*

1. This schedule does not cover—

\* \* \* \* \*

(ii) asbestos fibers, or yarns, fabrics, or other articles containing asbestos in significant amounts, i. e., articles in which asbestos is used in sufficient amounts to impart its peculiar characteristics or properties to the article (see part 1F of schedule 5);

\* \* \* \* \*

7. With respect to fabrics provided for in part 3 (other than fabrics valued over $2 per pound provided for in item 337.50) and in part 4 of this schedule, provisions for fabrics in chief value of wool shall also apply to fabrics in chief weight of wool (whether or not in chief value of wool). For the purposes of the preceding sentence, a fabric is in chief weight of wool if the weight of the wool component is greater than the weight of each other textile component (i. e., cotton, vegetable fibers except cotton, silk, manmade fibers, or other textile materials) of the fabric.

*Part 3 [schedule 3] headnote:*

1. This part covers all woven fabrics in the piece, of any width and with or without fast edges, including gauze and leno-woven fabrics, but does not include—

(i) any woven fabrics which are specially provided for in the provisions of part 4 of this schedule;

(ii) certain wool fabric samples (see part 7A of this schedule); or

(iii) woven fabrics in item 748.10 of part 7B of schedule 7.

It appears from the record that the merchandise is a woven fabric imported in pieces or rolls 55 to 60 yards long and 59 to 60 inches wide. It contains by weight approximately 70.4 percent reprocessed wool, 21.8 percent nylon and 7.8 percent asbestos.[1] It is used to

report of an analysis at the U. S. Customs Laboratory, shows a content of wool 74.7 percent, asbestos 6.6 percent and synthetics with a trace of cotton 18.7 percent.

make ladies' carcoats and semi-dressy coats.

At the outset a question of law is presented as to the intent of Congress regarding the classification of textile fabrics in part of asbestos. In view of headnote 1(ii) to schedule 3, *supra*, it is clear that if merchandise contains a significant amount of asbestos, as there defined, it is excluded from classification under schedule 3. Plaintiff claims, however, that the headnote cannot be deemed to remove from schedule 5 articles which, though not meeting the test in the headnote, are within schedule 5 by reason of being in chief value of asbestos.

The merchandise here, while in part of asbestos, is a woven fabric in chief weight of wool. It is made from a yarn composed of wool, nylon and asbestos, yarn being a textile material within the definitions in schedule 3. Headnote 1 to part 3 of schedule 3 provides that the part covers all woven fabrics in the piece, with certain exceptions not here pertinent. As originally enacted that schedule included item 339.00 covering woven fabrics of textile materials, not covered by the foregoing subparts. As amended by Public Law 89-405, 80 Stat. 130, item 339.00 was repealed and a provision enacted providing:

Woven fabrics of textile materials, not covered by the foregoing subparts of this part:

339.05 Containing over
 17 percent of wool by weight . . .***

This item would include the imported merchandise except for headnote 7 to schedule 3, *supra*, which provides that the provision for articles in chief value of wool shall apply to fabrics in chief weight of wool (whether or not in chief value of wool). In view of this headnote, the merchandise was assessed with duty under item 336.50, *supra*.

Plaintiff claims that this merchandise is in chief value of asbestos, is cloth of asbestos and other spinnable fibers, and is provided for *eo nomine* in item 518.21. That item, as written, includes cloth of asbestos or of asbestos and any other spinnable fiber. If read without reference to other provisions of the tariff schedules, it would cover the instant merchandise, if in chief value of asbestos, under the provision for cloth of asbestos; otherwise, under the provision for cloth of asbestos and other spinnable fibers.

However, item 518.21 cannot be read alone. It is a well-settled rule of statutory construction that the entire context of a statute must be taken into account and every effort made to give full force and effect to all the language contained therein. Dart Export Corp. et al. v. United States, 43 CCPA 64, 74, C. A.D. 610 (1956); United States v. Electrolux Corporation, 46 CCPA 143, 149, C.A.D. 718 (1959). All relevant headnotes in the tariff schedules are to be considered in determining Congressional intent. R. H. Macy & Co., Inc. v. United States, 57 CCPA, C.A.D. 988 (1970).

Schedule 3 of the tariff schedules covers most textile fibers and textile products. Headnote 1 to that schedule lists certain articles which it does not cover, including:

> (ii) asbestos fibers, or yarns, fabrics, or other articles containing asbestos in significant amounts, i. e., articles in which asbestos is used in sufficient amounts to impart its peculiar characteristics or properties to the articles (see part 1F of schedule 5);

While there is no corresponding provision in schedule 5, part 1F, the cross reference in schedule 3 is an indication that Congress intended that yarns, fabrics or other articles containing asbestos in significant amounts, as defined in the headnote, should be classified in schedule 5, part 1F, but that yarns, fabrics or textile articles containing insignificant amounts of asbestos should be classified in schedule 3. In effect, the headnote is an application of the *"de minimis"* rule to textile articles containing asbestos in amounts which do not impart the peculiar characteristics or properties of asbestos to the article. Under the *de minimis* rule a component which is a mere incident or immaterial

part of the entire article, does not enhance its value, and has no commercial purpose is disregarded for classification purposes. John S. Connor, Inc. v. United States, 54 Cust.Ct. 213, C.D. 2536 (1965). Here, the standard for judging whether the amount is significant or not is set by the statute.

Plaintiff claims that a reasonable and harmonious interpretation of the pertinent provisions of schedule 3 and of schedule 5 is that a woven fabric is classifiable under schedule 5 and not schedule 3, if it is either in chief value of asbestos, or, if it is composed of a combination of asbestos and another spinnable fiber, provided the amount of asbestos is significant. We do not so read headnote 1(ii) to schedule 3. The language indicates that it was not the intent of Congress to exclude all articles containing asbestos from schedule 3 nor those in chief value of asbestos, but only asbestos fibers, and yarns, fabrics or other articles containing amounts of asbestos sufficient to impart its peculiar characteristics or properties to the articles. The criterion is not chief value, but the characteristics or properties of asbestos imparted to the article.

A further indication of the intention of Congress as to the articles to be classified under item 518.21 is the statement in the Tariff Classification Study of November 15, 1960, prepared prior to the enactment of the tariff schedules (Schedule 5, p. 30):

\* \* \* These products to meet commercial standards usually contain 75 percent or more by weight of asbestos.

In this connection we note that the Standard Specifications and Tolerances for Woven Asbestos Cloth of the American Society for Testing and Materials (exhibit G) lists the grades of woven asbestos cloth beginning with a commercial grade of 75 to 80 percent asbestos and ending with grade AAAA having 99 to 100 percent asbestos.

Furthermore, when the bill adding headnote 7 to schedule 3 was before Congress, Senator Russell B. Long,

Chairman of the Committee on Finance, stated (114 Cong.Rec. 27617, 29923):

\* \* \* In the opinion of the Committee on Finance this amendment should substantially and permanently solve the recurring problem of fabrics essentially of low-value reprocessed wool being manipulated by foreign producers in a way to avoid the regular tariff on wool products.

\* \* \* \* \* . \*

\* \* \* Under it, the wool schedules are amended to state categorically that any fabric in chief weight of wool will be dutiable at wool rates, notwithstanding the fact that some other fiber included in the fabric may be the component of chief value. This in effect provides an exception to the usual rule in the tariff schedules that classification is determined by reference to chief value. \* \* \*

Senate Report No. 1496 on the bill (U.S. Code Congressional and Administrative News, 1968, vol. 3, p. 4584) points out two devices being used to avoid the high tariff on fabrics which were predominantly woolen. The purpose of the proposed legislation, according to the report, was to assure that any fabric which for practical purposes was a woolen fabric would be subject to duties at the wool rates and to anticipate and avoid the occurrence of tariff avoidance in this textile area.

■ Plaintiff's claim that headnote 7 violates the due process clause of the Fifth Amendment on the ground that it was a rider to Public Law 90–638, 82 Stat. 1359, is untenable. Said act is entitled "An Act to amend the Tariff Schedules of the United States with respect to the rate of duty on certain nonmalleable iron castings, and *for other purposes.*" [Emphasis supplied.] There is no restriction in the Constitution limiting Congress to one subject of legislation in each bill and mixed legislation is often enacted.

■ We conclude that it was the intent of Congress that yarns, fabrics or other textile articles containing asbestos

in amounts insufficient to impart thereto the peculiar characteristics or properties of asbestos should be classified under schedule 3, whether or not asbestos is the component material of chief value.

 Plaintiff claims, nevertheless, that headnote 1(ii) to schedule 3 is void on the ground that the terms "significant amounts" and "sufficient amounts to impart its peculiar characteristics or properties" are so vague and indefinite as to violate the due process clause of the Fifth Amendment. We are not in accord with this view.

The "void for vagueness" doctrine is more generally applied in criminal cases where a statute fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 95 L.Ed. 886 (1951); United States v. Harriss et al., 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); United States v. Petrillo, 332 U.S. 1, 6, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). It has been held applicable to civil actions in situations requiring "the exaction of obedience to a rule or standard * * * so vague and indefinite as really to be no rule or standard at all * * *." A. B. Small Company v. American Sugar Refining Company, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925); Boutilier v. Immigration and Naturalization Service, 387 U.S. 118, 123, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967).

Even in criminal cases it has been held that "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise." United States v. Harriss, *supra,* 347 U.S. p. 618, 74 S.Ct. p. 812. The Constitution requires no more than that the language convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." United States v. Petrillo, *supra,* 332 U.S. p. 8, 67 S.Ct. p. 1542.

Whether or not the "void for vagueness" doctrine is applicable to tariff statutes, we do not find that the language challenged here sets a standard which cannot reasonably be understood by those to whom it is directed. American Communications Assn. v. Douds, 339 U.S. 382, 412, 70 S.Ct. 674, 94 L.Ed. 925 (1950); United States v. Rock Royal Co-op, 307 U.S. 533, 574, 59 S.Ct. 993, 83 L.Ed. 1446 (1939).

The concept of classification on the basis of the presence or absence of an ingredient in sufficient or substantial amounts is not new to customs jurisprudence. B. Westergaard & Co. v. United States, 19 CCPA 299, T.D. 45469 (1932); Corporacion Argentina de Productores de Carnes v. United States, 32 CCPA 175, C.A.D. 304 (1945).

In the *Westergaard* case, the issue was whether certain fish balls, fish cakes, meat balls and meat cakes were classifiable under a provision for "soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both" under paragraph 773 of the Tariff Act of 1922. The only vegetable component was 3½ to 6 percent potato flour whose function was to hold the ingredients together during the cooking and sterilizing process. It was held that in view of its function the small percentage of potato flour was insufficient to give the merchandise the character of vegetables with meat and fish within the purview of paragraph 773.

On the other hand, in Corporacion Argentina de Productores de Carnes v. United States, *supra,* it was held that 5.-8 percent of grain in dog food was sufficient to bring the merchandise within the description "an admixture of grains or grain products with * * * other feedstuffs" since the grain served a definite and satisfactory food purpose. The court stated that the quantity could not be ignored and was substantial.

 Under the headnote here in issue, to take the merchandise outside schedule 3 and bring it within schedule

5, part 1F, it would be sufficient to show that the quantity of asbestos present imparted the peculiar characteristics or properties of asbestos to the imported article. Tariff acts are directed to trade and commerce and tariff terms are used in their known commercial sense, unless a contrary intention clearly appears. Swift & Co. v. United States, 27 CCPA 181, 185, C.A.D. 83 (1939). Persons dealing with articles composed in part of asbestos can be assumed to know what the characteristics of asbestos are and whether a particular article has any of those characteristics. Thus, they are in a position to apply the standard or, where it is claimed that customs officials have misapplied it, to establish that the asbestos in the imported article has in fact imparted its peculiar characteristics or properties thereto.

 Since the regional commissioner of customs classified this merchandise under item 336.50, as woven fabrics of wool, it is presumed that he found that it did not contain asbestos in a sufficient amount to impart its peculiar characteristics or properties to the fabric. The burden rests on plaintiff to overcome that presumption and establish the contrary. Novelty Import Co., Inc. v. United States, 53 CCPA 28, C.A.D. 872 (1966).

As to the peculiar characteristics of asbestos, we note that Webster's Third International Dictionary defines "asbestos" as follows:

1: a mineral (as chrysolite, tremolite, or actinolite) that readily separates into long flexible fibers suitable for uses where incombustible, nonconducting, or chemically resistant material is required.

In the instant case, plaintiff's witness Bino Bini, who is in the business of buying and selling raw materials for textiles and has dealt in asbestos for 3 years, testified that the principal characteristics of asbestos are that it is completely fire resistant and is not subject to moths. Samuel J. Golub, director of Fabric Research Laboratories, who also appeared on behalf of plaintiff, said it was generally mixed with more conventional fibers to produce a satisfactory yarn. He testified that it creates bulk in a fabric, adds warmth, increases fire retardancy, improves the cover or fuzzy surface of a wooly fabric, makes it more slippery to handle and adds to the weight. Defendant's witness, Julius B. Goldberg, consultant to the textile and allied industries, testified that asbestos has a very high specific gravity, has extremely fine fibers, is fire resistant, is fairly strong, and is not readily dyeable by any commercial process. Jesse L. Tucker, textile consultant, formerly with Johns-Manville, called to testify for defendant, said that asbestos is fire resistant, has good wicking characteristics, and resists destruction, although it transfers heat very readily. He also said that asbestos products are more or less bulky, although condensed and very compact.

Plaintiff does not contend that the merchandise here involved is fireproof nor that a similar cloth without any asbestos is not flame retardant or moth resistant, but that the instant merchandise containing about 8 percent asbestos is more flame retardant and more moth resistant than similar cloth without it. No one seems to have performed flammability or similar tests on samples of the imported merchandise itself. During the course of the trial one of defendant's witnesses, Richard Elliot Lutzer, assistant chief of the Fiber Section of the U. S. Customs Laboratory, was given a piece of the merchandise for analysis, but he analyzed it for the percentages of component materials only, and performed no other tests on it.

Bino Bini testified that he had conducted tests for 3 or 4 months on various types of material and had found that when fibers are mixed with asbestos, they take longer to burn. He testified:

I have personally conducted tests with fire to the various types of material that I have made. After repeated tests I have noticed with materials

which have non-burnable qualities and those which have asbestos, with a fire of a distance of about 7 or 8 inches, those materials that do not have the asbestos will burn readily, and those with it will be retarded.

\* \* \* \* \* \*

Q. What do you mean by retarded?—A. In measuring time those materials that are composed of wool and rayon, and those materials which are composed of asbestos, the fire will follow very quickly with the material that does not have asbestos.

Q. What do you mean by quickly?—A. When the fibers are just mixed with rayon and wool they will burn quickly. When the fibers are mixed with asbestos it takes longer to burn.

Q. How much longer?—A. As a rule, it is always double. It could be 5 to 10 seconds, 10 to 20 seconds. It all depends the distance that you have the fire away from the fibers.

Since the percentages of the components in the materials tested were not stated, these tests do not establish that merchandise containing about 72 percent reprocessed wool, 20 percent nylon, and 8 percent asbestos has the peculiar characteristics of asbestos.

Dr. Golub had not tested the merchandise herein in the laboratory, but after examining it in court, testified:

Well, it is a bulky fabric, obviously. It does have a slightly slippery hand; it has good cover. I am sure that because of the fine diameter and bulk characteristics of the fiber it has good insulating characteristics. I am also sure of the non-flammable characteristics, when you add a non-flammable material, is enhanced materially.

\* \* \* \* \* \*

\* \* \* Flammability depends on a great many factors. It depends on the surface of the material, the tightness of the material, the fiber composition, the weave, the twist of the yarn, and a number of other things. This is quite dense material, and it has a high wool content and nylon and

asbestos in it. I am sure a cigarette would not ignite it.

He added that in his opinion it would pass the United States test for flammability for apparel fabrics, as would such fabric without the 8 percent asbestos.

This testimony, too, is inconclusive, particularly in view of the later statements of Dr. Golub as to flammability tests:

In addition to fiber content, fabric construction affects the flammability test, fabric tightness, the fabric surface, whether it is fuzzed up or napped up; the density of the fabric, the thickness of the fabric, the construction of the yarn, and any surface finishes which might be put on as additives or manufacturing finishes. All of these can affect the flammability of the fabric.

\* \* \* \* \* \*

The only way, in my opinion, tests of that type can be meaningful is for the test to be conducted on the fabric in question, in any asbestos, in comparison with another fabric which is a very strict control for the test fabric. By very strict control I mean having the identical weight and tightness, the identical construction, being identical in every factor which has flammability, excepting for the content of asbestos; and unless that is done I don't think any test results can be meaningful.

Cameron Baker, director of research and development for the Better Fabrics Testing Bureau of New York City, called as a witness by plaintiff, testified that he had made a comparison test, comparing a fabric that had 8 percent asbestos with one in which the asbestos component was substituted by silk, and found that the fabric containing wool, nylon and silk was burned up fully in a vertical fire test, whereas the one containing asbestos stopped burning after 3 inches. The rate of burning was 12.2 inches per minute for the sample without asbestos and 5.8 inches per minute for the one with asbestos. This test is

also inconclusive under Dr. Golub's standard. We have no way of knowing whether the presence of silk in the fabric would add to or detract from the flammability of the fabric.

Mr. Lutzer testified that based upon his experience and training it was his opinion that the asbestos content of the imported merchandise, assumed to be 8 percent, was not sufficient to impart its peculiar characteristics or properties to the fabric. His opinion was based on tests in the laboratory of similar fabrics, which burned readily. He did not believe that the asbestos added any appreciable quantity to the fire resistance of the wool itself. He did not know whether a woven fabric of wool without asbestos was more fire resistant than one with 8 percent asbestos. Mr. Lutzer had never tested for fire resistance a cloth comparable to that here involved, having 70.4 percent wool, 21.8 percent nylon, and 7.8 percent asbestos. He had, however, performed flammability tests on nine fabrics containing from 4 to 9 percent asbestos. All of them burned readily and consumed themselves in from one to two minutes time. He imagined that they would pass the Federal flammability test for wearing apparel. Mr. Lutzer made no comparison tests with fabrics which contained no asbestos but believed there would be no variance in flammability. He believed they would pass the same test without asbestos.

Mr. Goldberg examined the merchandise at the trial and testified that visually and by feel, it had none of the characteristics of a mineral fiber. In his opinion a fabric containing 72 percent wool, 20 percent nylon, and 8 percent asbestos would not differ from a similar one containing no asbestos, with the possible exception of tiny specks, which might be some lighter colored or undyed asbestos fiber. It would not exhibit any of the properties identifiable with asbestos. Based on his experience with fibers, he testified that he could state with a reasonable degree of certainty that 8 percent asbestos imparted nothing of the asbestos characteristics

to the fabric. In his opinion, to detect any effect on the rate of burning, there would have to be 40 to 50 percent asbestos present.

Mr. Goldberg said he had recently tested five fabrics: one all wool, and the others containing from 4 to 8 percent asbestos. Three of these had been forwarded to Mr. Goldberg by Mr. Lutzer. They contained, respectively, 71.4 percent wool, 8 percent asbestos and 20.6 percent synthetics; 71.9 percent wool, 8.9 percent asbestos, and 19.2 percent synthetics; and 72 percent wool, 4.6 percent asbestos, and 23.4 percent synthetics. One of the other two fabrics contained practically 100 percent wool and the other had an asbestos content of 6.1 percent. The witness tested the 5 pieces for flammability in accordance with the standard method for apparel and none ignited. He also subjected them to a forced ignition test, allowing the flame to impinge on the fabric from 25 to 30 seconds. All of the fabrics were self-extinguishing. Mr. Goldberg subjected them further to a vertical test, during which ¾ths of an inch of the fabric was in the flame for 12 seconds. The wool sample did not ignite, and the others burned from 9 to 19 seconds. He concluded that the asbestos content in the samples contributed nothing in the nature of reducing the rate of burning. He did not test the wool sample to determine whether it had any flame retardant chemicals in it.

Mr. Goldberg pointed out that wool itself is fire retardant so that adding small amounts of asbestos contributes nothing toward improving the fire retardancy of the fabric.

Mr. Tucker testified that the asbestos content in a fabric containing 72 percent wool, 20 percent nylon, and 8 percent asbestos would have no noticeable effect on the flammable characteristics of the material. The fabric would not take on the characteristics of asbestos in any way. Based on tests made over the years, it was his opinion that 20 to 25 percent asbestos would be necessary to

change the feel of the material; that as much as 50 percent would be required to change the flammability of the fabric noticeably, and that 75 percent would be needed to pass the underwriters' test of flammability.

Mr. Tucker testified that asbestos has an odor but that the odor does not have an insect repellent quality. He did not think 8 percent asbestos would increase the moth resistant quality of the fabric. He explained that it had been found by other laboratories and the asbestos institute that when fibers like wool were intertwined, they, but not the asbestos, would be affected by moths.

Mr. Tucker also said that the imported merchandise was flame resistant as are all woolen fabrics, and that the addition of 8 percent asbestos would not make it any more flame resistant. It has good heat insulation because of the bulkiness of the wool fiber and both the wool and nylon have air entrapment qualities.

Dr. Golub testified in rebuttal that he had taken a photograph of a cross section of cloth having 71.6 percent wool, 20 percent nylon, and 8.3 percent asbestos and that the photograph, when enlarged, showed that while there was only 8 percent asbestos, the number of asbestos fibers was about 50 percent. The reason for this, according to the witness, was that asbestos fiber is very small in diameter by comparison with wool and nylon fiber. Because the specific gravity of asbestos is twice that of wool, he said that 8 percent of asbestos was equal in weight to 16 percent of wool. Thus, the addition of 8 percent asbestos would materially affect the weight of the fabric.

On the basis of this record, plaintiff claims that it has been shown that the addition of approximately 8 percent of asbestos imparted to the imported fabric the peculiarities of asbestos, that is, increased flame retardance, greater moth resistance, and added weight.

In our view, however, the record does not support this conclusion. None of the tests were conclusive, since none were performed on the imported merchandise nor were any comparison tests made between the imported merchandise and similar merchandise without asbestos with the controls mentioned by Dr. Golub. Furthermore, the weight of the expert testimony indicates that the asbestos content of the within merchandise was insufficient to impart its peculiar characteristics and properties to the fabric. There is no evidence that the asbestos was added for any commercial purpose. Paolo Bini, the manufacturer of the imported merchandise, testified on behalf of plaintiff that he had experimented for 7 months before this particular type of material was put on the market; that Tuscany Fabrics was notified of the experiments and thereafter ordered the material, specifying that it contain 8 percent asbestos. Irving N. Rifkin, president of plaintiff Tuscany Fabrics, testified that he specified that asbestos be used but not what the asbestos should do to the fabric. He selected it because he liked the way it looked; it had a favorable rate of duty, and much would be sold in this country.

On the record presented, we conclude that when all pertinent provisions of the tariff schedules are read together, it is evident that it was the intent of Congress that yarns, fabrics, and articles containing asbestos in significant amounts, that is, sufficient amounts to impart the peculiar characteristics or properties of asbestos to the article, should be classified under schedule 5, part 1F, but that yarns, fabrics or textile articles containing insignificant amounts should be classified under schedule 3; that the imported merchandise does not contain significant amounts of asbestos as defined by the headnote; that it is not excluded from classification under schedule 3; that it is in chief weight of wool; that in view of headnote 7, *supra,* it was properly classified under item 336.50, as other

woven fabrics of wool, not valued over $1.26⅔ per pound.

The protest is overruled and judgment will be entered for the defendant.

FORD and NEWMAN, JJ., concur.