Slip Op. 06-74

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

ARBOR FOODS, INC.,

                                        Before:       Jane A. Restani,
                                                                Chief Judge

         Plaintiff,

         v.                                Court No.     03-00414

UNITED STATES,

         Defendant.
_____

## OPINION

[Summary judgment in tariff classification case granted for defendant on its alternate classification.]

                                                     Dated: May 17, 2006

      Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (David M. Murphy, Robert F. Seely, and Robert B. Silverman) for plaintiff.

      Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jack S. Rockafellow); Beth C. Brotman, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, of counsel, for defendant.

      Restani, Chief Judge: Plaintiff Arbor Foods, Inc. ("Arbor") challenges the Bureau of Customs and Border Protection's ("Customs") classification for tariff purposes of a powder blend consisting of 98% sugar and 2% gelatin ("98/2 blend" or "blend") by total weight. This matter is before the court on cross motions for summary judgment pursuant to USCIT R. 56.

## FACTUAL BACKGROUND

      The imported blend entered the United States from Canada on July 10, 2001, on entry

number B69-2001107-4.  Customs liquidated the entry under subheading 1701.99.50 of the 2001

Harmonized Tariff Schedule of the United States ("HTSUS") as sugar.[1]  Arbor timely protested

the liquidation, arguing that the blend should be classified under subheading 2106.90.58,

HTSUS, as a food preparation of gelatin.[2]  Customs denied the protest, finding that the blend will

not perform as a food preparation of sugar and gelatin.  Letter from Myles B. Harmon, Dir.,

Commercial Rulings Div., U.S. Customs Serv., to Port Dir., U.S. Customs Serv. 3 (Mar. 25,

2003).  Customs found that the amount of gelatin in the blend was "irrelevant" because

additional gelatin was required to produce food products.  Id. at 5.  Customs instead found that

"sugar imparts the essential character of the product because it comprises a much larger

percentage of the product."  Id.  This appeal followed.

Customs maintains that subheading 1701.99.50, HTSUS, is the proper classification of

the subject blend because sugar comprises the majority of the blend.  Customs also argues that if

subheading 1701.99.50 is not the proper classification, then the blend should be classified under

subheading 2106.90.94 as a food preparation containing over 65% sugar.[3]  In contrast, Arbor

---

[1]Subheading 1701.99.50, HTSUS, states:

1701            Cane or beet sugar and chemically pure sucrose, in solid form:
                        Other:
1701.99                    Other:
1701.99.50                        Other.

[2]Subheading 2106.90.58, HTSUS, states:

2106            Food preparations not elsewhere specified or included:
2106.90                Other:
2106.90.58                    Other: Of gelatin.

[3]The relevant headings and subheadings regarding subheading 2106.90.94, HTSUS, state:

maintains that the presence of gelatin compels the classification of the blend under subheading

2106.90.58, HTSUS, as a food preparation of gelatin.[4]  Arbor also argues that because Customs

did not comply with the notice and comment procedures stated in 19 U.S.C. § 1625(c) (2000),

the current entry should be accorded the same treatment as that of a prior substantially identical

transaction and classified under subheading 2106.90.58.

　　　　Pursuant to USCIT R. 56(h), the parties stipulate that there are no genuine issues of

material fact to be tried and that the issues can be resolved through dispositive motions.  The

---

| 2106 | Food preparations not elsewhere specified or included: |
|---|---|
| 2106.90 | Other: |
| | Other: |
| | Other: |
| | Other: |
| | Other: |
| | Articles containing over 65 percent by dry weight of sugar described in additional U.S. note 2 to chapter 17: |
| 2106.90.92 | Described in additional U.S. note 7 to chapter 17 and entered pursuant to its provisions, |
| 2106.90.94 | Other. |

Additional U.S. note 7 to chapter 17 states that "no such articles shall be classifiable therein."  See Additional U.S. Note 7 to Chapter 17, HTSUS.  Thus, although both 2106.90.92 and 2106.90.94 refer to food preparations containing over 65% sugar, 2106.90.92 is not the applicable subheading pursuant to additional U.S. note 7.  Id.

Additional U.S. note 2 to chapter 17 limits classification under subheading 2106.90.94 to goods that are "capable of being further processed or mixed with similar or other ingredients" and are not packaged for retail sale.  See Additional U.S. Note 2 to Chapter 17, HTSUS.  There is no issue that the subject blend meets these requirements.

[4]The duties imposed under the relevant HTSUS subheadings are as follows:
　　　　Subheading 1701.99.50 – $0.3574 per kilogram,
　　　　Subheading 2106.90.58 – 4.8% ad valorem,
　　　　Subheading 2106.90.94 – $0.288 per kilogram plus 8.5% ad valorem.

parties agree that the subject blend is used in the United States as a food ingredient for human consumption. Pl.'s Statement of Material Facts Not in Issue ¶ 6; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 6. The parties also agree that gelatin does not add flavor or color to the blend but contributes to the jelling of the blend. Pl.'s Statement of Material Facts Not in Issue ¶ 10, 13; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 10, 13. Neither party disputes that the presence of 2% gelatin prevents the blend from being used in desserts and confections that do not contain both sugar and gelatin. Pl.'s Statement of Material Facts Not in Issue ¶ 11; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 11. The blend is used to make products including Rice Krispie Treats, Fruit Roll Ups, gummy bears, and gelatin desserts. Pl.'s Statement of Material Facts Not in Issue ¶ 14; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 14. Most of these products, however, require additional amounts of gelatin to make the end product. Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 14; Def.'s Statement of Undisputed Material Facts ¶ 11; Pl.'s Statement of Material Facts Not in Issue ¶ 14; Katz Aff. ¶ 9.

The court grants summary judgment to Customs on its alternate tariff classification. The court finds that the blend is classified properly under subheading 2106.90.94, HTSUS, as a food preparation containing over 65% sugar and that Arbor has not established a treatment for the purposes of a § 1625(c) claim.

**JURISDICTION & STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. §1581(a) (2000). The court may resolve a classification issue by means of summary judgment "when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." Bausch & Lomb, Inc. v. United

States, 148 F.3d 1363, 1365 (Fed. Cir. 1998).

Whether Customs has properly classified imported merchandise under the appropriate

tariff provision is a question of law that the court reviews de novo.  Pillowtex Corp. v. United

States, 171 F.3d 1370, 1373 (Fed. Cir. 1999); Conair Corp. v. United States, Slip Op. 05-95,

2005 Ct. Int'l Trade LEXIS 104, *4–*5 (Aug. 12, 2005).  In making its classification, the court

may consult the Explanatory Notes ("EN") to the HTSUS, which are not binding but are

"generally indicative of [the] proper interpretation of . . . the Harmonized Tariff System."

Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992) (quotation omitted).

## DISCUSSION

### I.      HTSUS classification

The General Rules of Interpretation of the HTSUS ("GRI") provide the procedure for

interpreting the HTSUS and classifying products for tariff purposes.  The Federal Circuit has

held that GRIs should be applied in the following manner:

> [A] court first construes the language of the heading, and any section or chapter notes
> in question, to determine whether the product at issue is classifiable under the
> heading.  Only after determining that a product is classifiable under the heading
> should the court look to the subheadings to find the correct classification for the
> merchandise.  See GRI 1, 6.

Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998).  Thus, the court first

examines the relevant headings, 1701 or 2106, and then determines the appropriate subheading.

Id.

### A.      The proper HTSUS heading

#### 1.      Heading 1701, HTSUS

Arbor argues that the 98/2 blend cannot be classified under heading 1701 because

heading 1701 is "limited to sugar and sugar that is mixed with or contains flavorings or colorants." Pl.'s Mot. Summ. J. 5. In contrast, Customs argues that the blend is classified properly under heading 1701 because the blend is functionally equivalent to sugar. Customs argues that this is so because of the "overwhelming amount of sugar" in the blend and because the amount of gelatin in the blend is de minimis. The court does not agree with Customs that the blend is classifiable as sugar.

As GRI 1 provides, the first step in determining the classification of an imported product is to examine the terms of the headings and any relevant section or chapter notes. See Orlando Food, 140 F.3d at 1440; Mita Copystar Am. v. United States, 160 F.3d 710, 711 (Fed. Cir. 1998). The heading for chapter 17.01 states "cane or beet sugar and chemically pure sucrose, in solid form." There are no relevant section or chapter notes pertaining to the subject blend.

The parties do not contest that the sugar portion of the blend is refined sugar that would be classified under heading 1701. Pl.'s Statement of Material Facts Not in Issue ¶ 5; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 5. The issue instead is whether the addition of gelatin to sugar prevents the blend from being classified as sugar.[5] The undisputed

---

[5]The court notes that GRI 2(b) states:

> Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substances with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

GRI 2(b). Thus, GRI 2(b) suggests that a heading such as 1701 can include mixtures containing sugar and other materials.

The ENs on Rule 2(b), however, caution that GRI 2(b) "does not . . . widen the heading

record shows that sugar provides a sweet taste, acts as a bulking agent, and readily dissolves in cold water. See Katz Dep. 60:16–25, June 2, 2005; Ex. E at 1 to Ex. 2 of Pl.'s Resp. to Mot. Summ. J. ("Vink Report"). It also has a crystalline structure and as defendant's expert, Walter V. Vink, a confectionery consultant, states, "[t]he technology of sugar confectionery is really the control of sugar crystallization." Vink Report 1. The undisputed facts also show that gelatin is one substance that controls the crystallization of sugar. Id. Gelatin is a flavorless refined protein extracted from animal skin and bones. Reg Groves, Marshmallow Production: Technology & Techniques, 49 P.M.C.A. Prod. Conf. 124, 125 (1995); Pl.'s Mot. Summ. J. 12; Pl.'s Statement of Material Facts Not in Issue ¶ 13; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 13. When mixed in water with sugar, it absorbs more water on a per-weight basis than sugar. Katz Dep. 61:24–62:7. Additionally, gelatin acts as a jelling agent and provides a chewy, elastic texture to products. Vink Dep. 10:14–25, June 2, 2005; Groves, supra, at 125. Gelatin also acts as an aerating agent by trapping air and adding "lightness" and "fluffiness" to a product. Vink Dep. 10:14–25; Pl.'s Statement of Material Facts Not in Issue ¶ 10; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶ 10. It is the most popular aerating agent for marshmallows. Groves, supra, at 125.

---

so as to cover goods which cannot be regarded . . . as answering the description in the heading." World Customs Organization, Harmonized Commodity Description and Coding System, Explanatory Notes, GRI 2(b) (XII) (2d ed. 1996) ("ENs"). Goods are not covered in this heading "where the addition of another material or substance deprives the goods of the character of goods of the kind mentioned in the heading." Id. Thus, although a heading can be expanded to include mixtures of the heading's stated item and other materials, the mixtures must still answer the description in the heading, as examined through GRI 1. Id.

The court also notes that it is unnecessary to reach GRI 3 if the blend is not prima facie classifiable under more than one heading or subheading, as examined through GRI 1. See GRI 1.

The court finds that 2% gelatin is a sufficient amount of gelatin to deprive the blend of the character of sugar. First, the undisputed evidence shows that the addition of 2% gelatin affects the blend's solubility. While pure sugar is completely soluble in cold water, the present blend will not completely dissolve in cold water but will cling together and form clumps of gelatin and sugar. Katz Dep. 52:12–18. Second, the undisputed evidence also shows that the 2% gelatin gives the blend a different texture from that of sugar. While pure sugar has a crystalline texture and cannot gel, the two percent gelatin gives the blend a gel-like structure. Pl.'s Statement of Material Facts Not in Issue ¶ 10; Def.'s Statement of Undisputed Material Facts ¶ 9. Thus, the court finds that the addition of gelatin deprives the blend of the solubility and crystalline texture that is characteristic of sugar.

More importantly, the court finds that the characteristics of this blend impart it with a different functionality from that of pure sugar. The record clearly shows that when the blend is substituted for sugar and mixed with water to form a beverage like Kool Aid, the resulting beverage will have clumps of the powder blend that are uncharacteristic of Kool Aid and detract from the enjoyment of the beverage. Katz Dep. 52:12–18. Likewise, the undisputed record shows that the blend cannot be substituted for sugar to make instant chocolate pudding because undesirable clumps will also form in the end product. Katz Dep. 52:22–53:5. Additionally, both parties agree, and the evidence shows, that the jelling property of the blend renders it suitable only to make products containing gelatin, such as Rice Krispie Treats, Fruit Roll-Ups, and gummy bears. Pl.'s Statement of Material Facts Not in Issue ¶¶ 11, 14; Def.'s Statement of Undisputed Material Facts ¶ 9. This change in functionality further compels the finding that this blend is not classifiable as sugar.

The blend's functionality is significant in light of the ENs of 17.01. Although the ENs are not determinative, the notes reinforce the court's finding. The ENs to 17.01 state that sugar covered by the chapter "may contain added flavouring or colouring matter." ENs Chapter 17.01. These explicitly permitted substances alter the flavor or color of sugar but do not alter its solubility and texture. Hence, because substances that alter the solubility and texture of sugar are not included in the list of acceptable matter, solubility and texture are probably important qualities of sugar that should not be altered if the mixture was still to be considered sugar.[6]

In sum, the undisputed record evidence shows that the addition of gelatin deprives the blend of important characteristics found in pure sugar and prevents the blend from being used interchangeably with sugar.

### 2.       Customs' de minimis argument

Customs also argues that the amount of gelatin in the blend is de minimis. For classification purposes, a component of an article is de minimis if it is merely an incidental or immaterial element of an entire article, does not enhance its value, and has no commercial purpose. See Tuscany Fabrics, Inc. v. United States, 65 Cust. Ct. 182, 186, 317 F. Supp. 741, 743 (1970). None of these factors is present here.

As discussed previously, the gelatin is not an incidental or immaterial element of the blend but imparts important characteristics to the blend and dictates its use. Moreover, the

---

[6]The court notes that heading 1701 contains a subheading, 1701.99, that refers to "other." See Subheading 1701.99, HTSUS. While "other" may be interpreted as referring to sugar blends containing material other than coloring or flavoring, it is unclear what types of blends would fall under this category. It is unlikely, however, that this category could be stretched to include sugar blends that do not have the characteristics of sugar. See ENs GRI 2(b) (XII). Furthermore, in light of the ENs to 17.01, it is also unlikely that this subheading refers to sugar blends that do not have the solubility or texture of pure sugar.

gelatin also enhances the value of the blend. The only proffered evidence of the costs of the ingredients show that, on its own, gelatin costs approximately $1.88 per pound while sugar which costs approximately $0.14 per pound. Pl.'s Statement of Material Facts Not in Issue ¶ 12. Meanwhile, the blend costs approximately $0.20 per pound. Id. Hence, gelatin, being the more expensive of the two substances in this mixture, enhances the value of the blend.

The blend also has a specific commercial purpose in the production of confections. First, the record shows that sugar and gelatin particles in the blend cannot be separated in a cost-efficient manner and thus, the blend must be used as it is sold. Letter from Rodney B. McKeever, P.E., Director, Chemical Process Servs., Hauser Lab., to David M. Murphy, Grunfeld, Desiderio, Lebowitz, & Silverman LLP 2 (Aug. 29, 2000). Second, the record evidence also shows that Arbor blends sugar and gelatin in specific ratios stipulated by its U.S. customers and that these customers formulated the ratios to streamline their production processes. For instance, the undisputed record evidence shows that Kellogg requested the 98/2 blend ratio to improve the production of the marshmallow cream used in its Rice Krispie Treats. Katz Dep. 27:17–28:12; Heine Aff. ¶ 12. On its own, gelatin cannot be added directly into the mixture of ingredients for marshmallow cream because the gelatin will not hydrate properly. Katz Dep. 28:24–29:6. Instead, the gelatin must first be hydrated in water before it can be mixed with the other ingredients. Id. The subject blend, however, does not need to be hydrated in water and can be mixed directly with the other ingredients, thus saving a step in the production of marshmallow cream. Id. 27:17–28:12.

Additionally, the undisputed record evidence demonstrates that Favorite Brands International ("Favorite Brands"), the customer that requested the subject import, also uses the

blend to maximize its production efficiency.  Favorite Brands makes gummy fruit snacks.  In

order to do this, Favorite Brands concocts a "slurry" that forms the basis for its products.[7]

Memorandum from David Lee, Quality Manager, Favorite Brands Int'l, to Robert M. Black, Dir.

of Ingredients, Favorite Brands Int'l (Jan. 21, 1998).  It found that a blend of 98% sugar and 2%

gelatin allowed it to make its slurry in a timely manner, minimized the foaming of the slurry, and

ensured the full hydration of the gelatin.  Id.  Although Favorite Brands may later add more

gelatin into the slurry to make some of its products, it determined that this ratio was the most

effective combination for its production process.  Id.; Letter from Robert M. Black, Dir. of

Ingredients, to Eric Lyons, Total Foods Corp. (Jan. 22, 1998).

Accordingly, because the undisputed facts demonstrate that the amount of gelatin in the

blend is not de minimis and because the gelatin in the blend strips the blend of important

qualities of sugar, the blend is not classifiable under heading 1701, HTSUS.

### 3.      Heading 2106, HTSUS

The court next considers whether heading 2106, HTSUS, is an appropriate heading.

Heading 2106 covers "[f]ood preparations not elsewhere specified or included."  The ENs state

that the heading covers:

> (A) Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption.
> (B) Preparations consisting wholly or partly of foodstuffs, used in the making of beverages or food preparations for human consumption.  The heading includes preparations consisting of mixtures of chemicals (organic acids, calcium salts, etc.) with foodstuffs (flour, sugar, milk powder, etc.), for incorporation in food preparations either as ingredients or to improve some of their characteristics

---

[7]Favorite Brands makes its slurry by mixing the subject blend with starch and corn syrup. Memorandum from David Lee, Quality Manager, Favorite Brands Int'l, to Robert M. Black, Dir. of Ingredients, Favorite Brands Int'l (Jan. 21, 1998).

(appearance, keeping qualities, etc.).

The Federal Circuit has also considered the definition of "preparation" and held that:

> Inherent in the term "preparation" is the notion that the object involved is destined for a specific use. The relevant definition from The Oxford English Dictionary defines "preparation" as "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences." 12 The Oxford English Dictionary 374 (2d. ed. 1989).

Orlando Food, 140 F.3d at 1441.

Here, neither party contests that the blend falls within the definition of food preparation because it is used to make confections and other gelatin-based desserts. Additionally, Customs agrees that the blend should be classified under heading 2106 if it is not classifiable under heading 1701. The court agrees with the parties that the blend is a food preparation and finds that the blend is classified properly under heading 2106.

### B.    The proper HTSUS subheading

Once the proper HTSUS heading has been determined, the court then determines the proper HTSUS subheading. See Orlando Food, 140 F.3d at 1440. Arbor argues that the blend is classified properly under subheading 2106.90.58, HTSUS, as a food preparation of gelatin.[8] In contrast, Customs argues that the blend is classified properly under subheading 2106.90.94, HTSUS, as a food preparation containing over 65 percent sugar.

---

[8]Specifically, Arbor argues that the blend should be classified under 2106.90.5870, HTSUS, as "[f]ood preparations not elsewhere specified or included: [o]ther: [o]ther: [o]f gelatin: [o]ther: [c]ontaining sugar derived from sugar cane or sugar beets" because it is the more specific subheading. The court notes the statistical suffix represented by the digits "70" references sugar for informational purposes. See Subheading 2106.90.5870, HTSUS. Statistical suffixes, however, "are not part of the legally binding, statutory language of HTSUS." Pillotex Corp. v. United States, 21 CIT 1154, 1157, 983 F. Supp. 188, 191 (1997). Thus, the court examines subheadings 2106.90.58 and 2106.90.94, without regard to the statistical suffix of subheading 2106.90.58. Id.

Under GRI 1 by application through GRI 6, the court examines whether the subject blend containing 2% gelatin is classifiable under subheading 2106.90.58, HTSUS, as a food preparation "of gelatin." See GRI 6. In Wilsey Foods, Inc. v. United States, the court examined an import that contained some milk or cream and found that the import was not a food preparation "of milk or cream" because milk or cream "[was] not the essential ingredient, not the ingredient of chief value, nor [was] it the preponderant ingredient" and because industries did not consider the product to be milk or cream products. 18 CIT 212, 213 (1994). Similarly, in this case, the court finds that the gelatin is not the essential ingredient, the ingredient of chief value, or the preponderant ingredient and thus, that the blend is not classifiable as a food preparation "of gelatin."

Here, although the evidence shows that gelatin may be one of the important ingredients of the blend because it imparts crucial characteristics to the blend, the court finds that gelatin is not the essential ingredient in the blend. The court instead finds that sugar is the essential ingredient in the blend because the blend is used to make confections primarily for its sweetness. The uncontested evidence shows that while the amount of gelatin present in the current blend contributes to the jelling and aerating of a food product, numerous products require additional amounts of gelatin to make the final product. See Vink Report 4; Def.'s Statement of Undisputed Material Facts ¶ 11; Katz Aff. ¶ 9. For example, Arbor's expert notes that a gelatin dessert such as jello is composed of two to five percent gelatin after the addition of water and other ingredients. See Katz Dep. 43:25–44:6. Because the addition of water and other ingredients would dilute the percentage of gelatin, this logically implies that the dry sugar-gelatin blend used to make jello contains more than 2% gelatin. See id. Additionally,

uncontested evidence shows that gummy bears are either composed of approximately six to fifteen percent gelatin, see Vink Report 3–4, or low percentages of gelatin combined with other hydrocolloids[9] that gel-thicken the product and control the cystallization of sugar, Katz Dep. 37:18–38:12. This again demonstrates that the gelatin in the subject blend is insufficient on its own to make gummy bears.

Other sugar and gelatin blends imported and classified under subheading 2106.90.58, HTSUS, have not required additional gelatin to make the end product. See NY E83561 (July 2, 1999) (95% sugar and 5% gelatin). Although the record evidence suggests that additional gelatin is unnecessary to make marshmallow cream, Heine Dep. 41:23–42:7, Sept. 24, 2004, the court finds that this is insufficient to establish that the blend is used more for its jelling and aerating qualities than its sweetening qualities. The court instead finds that the need to add further gelatin to the majority of products demonstrates that the primary purpose of the blend is its sweetening function. See Katz Dep. 43–44; Vink Report 4; Def.'s Statement of Undisputed Material Facts ¶ 11. Hence, gelatin is not the essential ingredient in the blend.

Furthermore, the undisputed facts also show that gelatin is not the ingredient of chief value[10] and does not comprise the majority of the ingredients in the blend. See Pl.'s Statement of Material Facts Not in Issue ¶¶ 5, 12. Accordingly, because the gelatin is not the essential ingredient, the ingredient of chief value, or the preponderant ingredient, the subject blend is not classifiable as a food preparation of gelatin.

---

[9]Gelatin is a hydrocolloid. Katz Dep. 37:18–38:12.

[10]Based upon the plaintiff's stated costs of each ingredient, $1.88 per pound for gelatin and $0.14 per pound for sugar, Pl.'s Statement of Material Facts Not in Issue ¶ 12, the cost of gelatin in one pound of the blend would be $0.0376 while the cost of sugar would be $0.1372.

The court next examines whether the blend is classifiable under 2106.90.94 as a food preparation containing over 65 percent by dry weight of sugar. The blend answers the terms of the heading and subheading exactly because it is a food preparation containing over 65% by dry weight of sugar. Moreover, neither party contests that the blend retains the sweetening properties of sugar. Pl.'s Statement of Material Facts Not in Issue ¶¶ 5, 13; Def.'s Statement of Undisputed Material Facts ¶¶ 10. Hence, the court finds that the blend is classifiable as a food preparation containing over 65% sugar pursuant to GRI 1.

In sum, sugar is by far the major ingredient of the mixture, that is 98% of it. To permit the 2% gelatin component to control here would be to allow the tail to wag the dog. While the 2% gelatin has an important function in the blend and is sufficient to remove this blend from classification as sugar, it does not make the product "of gelatin."[11] Accordingly, the court finds that the blend is classified properly under subheading 2106.90.94, HTSUS.

## II.     Arbor's 19 U.S.C. § 1625(c) treatment claim

Arbor claims that because Customs did not follow the procedures of 19 U.S.C. § 1625(c), the present entry should be accorded the same treatment as prior substantially identical transactions and classified under subheading 2106.90.58, HTSUS. Arbor argues that Customs failed to comply with the notice and comment procedures provided by § 1625(c) when it denied Arbor's classification protest. Arbor argues that Customs was required to follow the procedures of § 1625(c) because from 1994 to 1996, Customs classified a nearly identical product, a blend of 97.3% sugar and 2.7% gelatin, under subheading 2106.90.58, HTSUS. Customs claims that

---

[11]Gelatin-sugar blends present a difficult line-drawing issue. Where the line should be drawn is not obvious and the court does not resolve that issue, other than to find that this 98/2 blend is not on the gelatin side of the line.

Arbor's argument is flawed because: (1) Arbor "fail[ed] to identify an 'interpretive ruling or decision' which changed an alleged treatment," Def.'s Cross-Mot. Summ. J. 20, (2) Arbor "fail[ed] to establish a 'treatment' that was previously accorded to substantially identical transactions," Def.'s Cross-Mot. Summ. J. 21,  and (3) later administrative penalties against the owner undermined the claim, Def.'s Cross-Mot. Summ. J. 24.  The court finds that Arbor failed to establish a treatment that was accorded to previous substantially identical transactions.[12]

> 19 U.S.C. § 1625(c) provides that:
>
> A proposed interpretive ruling or decision which would –
> > (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or
> > (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;
>
> shall be published in the Customs Bulletin.  The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period.  The final ruling or decision shall become effective 60 days after the date of its publication.

Id.  To establish a violation of § 1625(c)(2), Arbor Foods must show that: "(1) an interpretive ruling or decision (2) effectively modifie[d] (3) a 'treatment' previously accorded by Customs to (4) 'substantially identical transactions', and (5) that interpretive ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." Precision Specialty Metals, Inc. v. United States, 24 CIT 1016, 1040, 116 F. Supp. 2d 1350, 1374 (2000).

---

[12]In regards to Customs' first argument, Arbor has identified the denial of its classification protest as the "interpretive ruling or decision" that changed an alleged treatment. See Cal. Indus. Prods., Inc. v. United States, 436 F.3d 1341, 1351 (Fed. Cir. 2006) (defining interpretive ruling as "including any ruling letter, or internal advice memorandum").

Because § 1625(c) does not define treatment, the agency and the reviewing court gives

the undefined term its ordinary meaning.  Precision Specialty Metals, 24 CIT at 1042, 116 F.

Supp. 2d at 1376.  In Precision Specialty Metals, the court held that "treatment" refers to the

actions of Customs and that § 1625(c) allows importers to order their behavior based on

Customs' prior actions.  Id. at 1044, 116 F. Supp. 2d at 1377.  Customs, however, narrowed the

scope of actions that constitute treatment under § 1625(c).  In 19 C.F.R. § 177.12(c), Customs

stated that "[it] will give no weight whatsoever to informal entries or transactions which [it], in

the interest of commercial facilitation and accommodation, processes expeditiously and without

examination or Customs officer review."  19 C.F.R. § 177.12(c)(1)(ii) (2006).  The Federal

Circuit subsequently held that this was a permissible construction of § 1625(c) that warrants

deference and that entries liquidated under Customs' "bypass" procedures are not considered

"treatments" for the purposes of § 1625(c).  Motorola, Inc. v. United States, 436 F.3d 1357,

1366 (Fed. Cir. 2006).

Here, Arbor has not established that the allowed entries made from 1994 to 1996 are

treatments for the purposes of § 1625(c).  Although Arbor provided the court with a listing of the

entries made from 1994 to 1996, it did not submit any evidence that these entries were made

under Customs' formal procedures rather than its informal bypass procedures.  Thus, Arbor has

not demonstrated that the 1994 through 1996 entries qualified as treatments by Customs.

The other entries cited by Arbor also do not invoke § 1625(c) because they do not

involve substantially identical transactions.  The Federal Circuit has noted that "the requirement

that transactions be 'substantially identical' does not require complete identity" and that the

transactions do not have to involve the same parties.  Cal. Indus. Prods., Inc., 436 F.3d at

1352–56. The Federal Circuit, however, has upheld the court's ruling that "substantially identical" requires "such similarity or near resemblance as to be fundamentally equal or interchangeable." See Motorola, Inc. v. United States, 350 F. Supp. 2d 1057, 1074 (CIT 2004), aff'd in part, rev'd in part 436 F.3d 1357. Here, the other entries cited by Arbor that were classified under food preparation of gelatin are also not substantially identical because they involve blends comprised of significantly different ratios of sugar and gelatin. See NY E83561(95% sugar and 5% gelatin); NY K80306 (Nov. 5, 2003) (94% sugar and 6% gelatin).

Accordingly, Arbor's § 1625(c) claim fails because it has failed to establish a treatment by Customs that was accorded previously to substantially identical transactions.

## CONCLUSION

For the foregoing reasons, the court grants summary judgment for the defendant and finds that the subject merchandise is classified properly under subheading 2106.90.94, HTSUS.

/s/    Jane A. Restani
Jane A. Restani
Chief Judge

Dated:  New York, New York
This 17th day of May, 2006.

**ERRATA**

Please make the following changes to <u>Arbor Foods, Inc. v. United States</u>, No. 03-00414, Slip. Op. 06-74 (Ct. Int'l Trade May 17, 2006):

•       Page 7, line 6 of the footnote: Replace "2d ed. 1996" to "3d ed. 2002"

May 17, 2006